**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RAY JAMES,

       Petitioner,

v.                                         Case No: 8:11-cv-640-T-27MAP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

Petitioner, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions for attempted lewd or lascivious molestation and battery entered in 2003 in the Thirteenth Judicial Circuit, Hillsborough County, Florida. In its response (Dkt. 26), Respondent argues that the petition should be denied. Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Petitioner was charged with one count of lewd or lascivious molestation (count one) and one count of attempted lewd or lascivious molestation (count two). On November 14, 2003, a jury convicted him of the lesser-included offense of attempted lewd or lascivious molestation on count one and of the lesser-included offense of battery on count two. On March 19, 2004, Petitioner was sentenced to fifteen years' imprisonment on count one and time served on count two. The Second District Court of Appeal *per curiam* affirmed Petitioner's judgment and sentence on September 28, 2005. *James v. State*, 915 So.2d 1208 (Fla. 2d DCA 2005) (table).

Petitioner filed a motion for postconviction relief, as well as an amended motion for postconviction relief, under Florida Rule of Criminal Procedure 3.850. The state court entered orders summarily denying several of petitioner's claims and granting an evidentiary hearing on the remaining claims. Following the evidentiary hearing, the state court filed its final order denying Petitioner's Rule 3.850 motion on March 20, 2008.

On July 16, 2010, the Second District Court of Appeal affirmed the denial of Petitioner's Rule 3.850 with the exception of part of claim five. The appellate court reversed and remanded as to the portion of claim five alleging that the fine imposed on Petitioner exceeded the statutory maximum. *James v. State*, 44 So.3d 601 (Fla. 2d DCA 2010). The mandate issued on October 25, 2010.[1] Respondent acknowledges that the habeas petition is timely.

## STANDARD OF REVIEW

### 1. AEDPA

This petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") effective April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) sets forth a highly deferential standard for federal court review of a state court's findings of law and fact. It provides that habeas relief may not be granted on a claim adjudicated on the merits in state court unless such determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[1] It appears that Petitioner's subsequent motion to enforce mandate was denied in an order entered April 5, 2011. (Dkt. 28, Ex. 26.)

of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The Supreme Court has explained the deferential review of a state court's findings:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's factual findings must also be given deference.  Specifically, a state court's determinations of fact "shall be presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003).

## 2.      Exhaustion, Procedural Default, and Federal Constitutional Question

In order to pursue federal habeas relief, a state prisoner must exhaust every available state court remedy for challenging his conviction.  28 U.S.C. § 2254(b)(1).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c); *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003).

To exhaust state remedies, a petitioner must make the state court aware of both the legal and factual bases for his claim. A petitioner must "fairly present" his federal claim in state court. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). "To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)).

"[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004). Exhaustion therefore requires that the petitioner present the state court with the particular legal basis for relief, as well as the facts supporting the claim. *See Snowden*, 135 F.3d at 735.

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). *See also O'Sullivan*, 526 U.S. at 848; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999).

Additionally, a federal habeas petition must involve a question of federal law. A state court's interpretation of state laws or rules, when no federal constitutional issue is addressed, does not provide a basis for federal habeas relief. Therefore, a claim that solely involves state law is not cognizable in a § 2254 petition. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citing *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-55 (11th Cir. 1983)).

3.      **Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To obtain relief under *Strickland*, a petitioner must show that counsel's performance was deficient and that this deficiency prejudiced the petitioner.  *Id*. at 687.  In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance."  *Id.* at 690.  To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

Counsel is presumed to have provided effective assistance.  *Id.* at 690.  Further, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*.  If a reviewing court can dispose of a claim of ineffective assistance of counsel on one prong of the *Strickland* test, the court need not consider the other prong.  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

## DISCUSSION

Petitioner presents fourteen grounds for relief.  His claims of ineffective assistance of counsel, raised in Grounds Two through Twelve, will be addressed first, followed by his claims concerning errors in the state court proceedings, raised in Grounds Thirteen and Fourteen, and his claim of actual innocence, raised in Ground One.

**Ground Two: "Unreasonable and substandard investigations of James alibi and exonerating**

**evidence."**

This case involved one count of lewd or lascivious molestation and one count of attempted lewd or lascivious molestation that occurred on May 8, 2002, at a swimming pool at the apartments where Petitioner and the two minor victims lived.  The charging document specified that these offenses took place in Hillsborough County.  Petitioner argues that counsel failed to obtain and present documentary evidence showing that he was at work in Pinellas County on the date and time when the offenses occurred.  He argues that the state court erred in applying *Strickland* to this claim when it denied his Rule 3.850 motion.

In ground one of his Rule 3.850 motion, Petitioner argued that counsel was ineffective for failing to present alibi evidence in the form of sign-in and sign-out logs from his place of employment that would have shown he could not have committed the offenses.  Therefore, Petitioner raised essentially the same claim in his Rule 3.850 motion that he now presents as Ground Two of his habeas petition.  Accordingly, his claim of ineffective assistance of counsel for failure to present alibi evidence was raised in state court and his petition, liberally construed, presents an exhausted claim.[2]

The state court conducted an evidentiary hearing on this claim.  At the hearing, counsel testified that he discussed a potential alibi defense with Petitioner, who indicated to counsel that he was working in Orlando at the relevant time.  (Dkt. 28, Ex. 14A, Transcript of March 28, 2007

---

[2]Petitioner alleges in his habeas petition that his work records would have shown he was in Pinellas County. Petitioner did not specifically argue in his Rule 3.850 motion that these documents would have demonstrated his presence in Pinellas County or any other particular location. To the extent he may be attempting to raise new facts in support of claim of ineffective assistance of counsel, such facts cannot be considered because they were not presented to the state court. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982).  However, Petitioner's overall claim that counsel was ineffective for failing to obtain work records that would have shown he could not have committed the offenses on the date and time alleged is considered.

Evidentiary Hearing, p. 7.)  Counsel described his investigation of an alibi defense.  He testified that

the payroll voucher time card provided that Petitioner worked for seven hours on May 8, 2002.  (Id.,

p. 8.)  However, he testified that upon further investigation, these hours could not be verified:

> Basically it said seven hours but there was no sign in there was no sign out because
> these were temporary employees and they didn't log in and didn't log out.  And at the
> - - basically at the end of the week they gave their supervisors their hours.  They
> filled out a time sheet and they signed off on it.  That's how it works over there.  It -
> - although it appeared to be an alibi, it had some serious deficiencies for an alibi."

(Id., p. 9.)  When attempting to question personnel from Petitioner's employer further, counsel

testified, he was informed that Petitioner's employer would no longer assist his investigator and that,

"At this point the alibi was starting to fall apart."  (Id., p. 10.)

Counsel testified that he also looked into toll records that might have shown Petitioner was

not in the area where the offenses took place, but that no records from the day in question were

found.  He testified that, "We had toll slips from May 6th.  A bunch of them, but we didn't have any

toll slips from May 8th."  (Id., 9.)  Finally, counsel testified that his investigator subpoenaed

Petitioner's financial records to see if they placed Petitioner in Orlando.  (Id., p. 10.)  Counsel

testified that the financial documents did not support the alibi theory.  (Id., pp. 10-11.)  Further,

counsel testified that he recalled informing Petitioner that "at this point we didn't have a solid

alibi...."  (Id., p. 12.)  He testified that Petitioner appeared to understand this information.  (Id.)

Petitioner testified that as soon as he became aware of the date of the allegation, he informed

counsel that he was "most likely at work and that we sign in and sign out with ink on paper every

day."  (Id., p. 41.)  Petitioner testified that he gave counsel all the information to acquire these

records.  (Id.)  Petitioner testified that counsel did not obtain his complete work records (Id., p. 47.)

He further testified that it was possible that at the time, he was going back and forth to a work project

in Orlando, but that, alternatively, he could have been working on the day in question at his employer's main office in Clearwater.  (Id., pp. 47-48.)

> The state court found that counsel was not deficient and denied this claim:

> At the evidentiary hearing, counsel testified that he did investigate Defendant's possible alibi defense, but that he could not put forth such a defense because it was not a true alibi.  Specifically, counsel testified that this evidence could show only that Defendant was at work for seven hours on the date of the offense, but could not show which seven hours, and thereby could not provide a true alibi for Defendant at the time of the offense.  The Court finds this testimony to be credible, and finds that Defendant has failed to demonstrate how counsel's performance was deficient.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, pp. 1-2) (court's record citations omitted).  Counsel's evidentiary hearing testimony reflects his numerous attempts to pursue information that would have supported an alibi defense.  But the information he found was not useful for this purpose.

By presenting an alibi, a petitioner asserts that he was not present when the crime occurred.  *See* Fla. R. Crim. P. 3.200.  Counsel testified that while the time sheet indicated that Petitioner was at work for seven hours on May 8, 2002, there was no way to verify the hours.[3]  Therefore, this document did not definitively account for Petitioner's location when the offenses took place.  While Petitioner testified that counsel did not obtain his complete work records, he did not specify what any other records would have shown or present any such records.

Additionally, counsel testified that Petitioner's financial records and toll records would not sustain an alibi defense.  The record therefore supports the state court's finding that counsel was not

---

[3]It appears that the work records counsel received in his investigation were entered into evidence at the Rule 3.850 evidentiary hearing and are included in the record of this habeas petition.  A review of those documents supports counsel's testimony and the state court's finding that they only provide the number of hours worked on May 8, 2002, without more specific information.  (Dkt. 28, Ex. 14, Defense Exhibit.)

ineffective for failing to present alibi evidence.  Petitioner has not shown that the state court's finding was contrary to or an unreasonable application of clearly established federal law or based upon an unreasonable determination of the facts in light of the evidence presented.  Consequently, he is not entitled to relief on Ground Two.

**Ground Three: "Unreasonable and substandard investigations of State's key witnesses."**

Petitioner argues that counsel failed to investigate the victims.  He asserts that an adequate investigation would have shown that the victims were in school on the date and time that the offenses occurred.  Petitioner argues that the state court erred in applying *Strickland* to this ground.[4]

Petitioner's claim concerning the school attendance of the victims was raised in ground two(c) of his amended Rule 3.850 motion, in which he claimed that counsel should have called teachers and school officials to testify "to the presence of the alleged victims at school during the day and time they allege this incident occurred."  (Dkt. 28, Ex. 14, Motion to Amend and Reconsider, p. 4.)  Petitioner further asserted that the victims were students at Bay Crest Elementary in Hillsborough County, that May 8, 2002, was a regular school day, and that the victims testified that the offenses occurred during the day "after lunch" and "around 1:30."  (Id., p. 3.)  He argued that if the jury had heard this evidence, they would have acquitted him.  Liberally construed, his habeas petition raises substantially the same claim as that brought in ground two(c) of his Rule 3.850 motion.[5]

---

[4] Additionally, Petitioner repeats his argument that his work attendance records, and his sign-in and sign-out logs would have shown that he was present at work in another county at the time the victims stated the offense occurred.  This claim was considered and denied in Ground Two.

[5]Respondent asserts that this claim is procedurally defaulted because Petitioner did not "alert the state appellate court he was asserting the denial of a federal constitutional claim."  (Dkt. 26, p. 15.)  However, Petitioner asserted in his appeal of the denial of his Rule 3.850 claim that the trial court's findings were not supported by competent, substantial evidence and specifically asserted as to the issues raised in ground two(c) that counsel was

The state court conducted an evidentiary hearing on this claim.  Counsel testified that he did not investigate anyone at the school, and did not believe that he subpoenaed the school records of the victims or asked his investigator to verify the information.  (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, pp. 27, 28.)  Counsel further testified that he did not believe this information would be relevant.  He testified that the victims "had testified quite consistently that they were at the pool and that's exactly what they told the police officers.  I had no reason to believe the school records were going to be relevant or necessary."  (Id., p. 39.)

Petitioner testified that he did not discuss the victims' school records with counsel: " I didn't discuss with him their school records but I - - because like I said, I don't know these people what so ever.  So I - - at the point before trial, I did not discuss with him the school records because I didn't know who these people were.  I left [it] basically up to him ...."  (Id., p. 45.)

The state court denied this ground, noting that counsel testified "that he would not have called school officials and teachers as witnesses as he did not believe such would have been relevant or necessary ... The Court finds counsel's testimony to be credible, and finds that Defendant has failed to demonstrate that counsel was deficient or that Defendant was prejudiced as a result."  (Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 4.)

Counsel's testimony reflected that he had no reason to doubt the victims' reports concerning the location of the offenses because they consistently stated that they were at the pool.  Moreover, as Petitioner's testimony suggests, he and counsel discussed that if Petitioner testified, his defense

---

deficient and that the state court erred in finding that Petitioner failed to demonstrate deficient performance of counsel. (Dkt. 28, Ex. 15, pp. 14, 26-28.)  Therefore, Petitioner informed the state appellate court of his constitutional claim and this ground has been exhausted.

would be that he was not present and did not commit the offenses.[6]  Such a defense does not exclude the possibility that the victims were in fact at the pool on the date and time they alleged. Additionally, as the victims' school attendance records have not been produced, Petitioner has not shown that they would have been helpful to him at trial.  He has set forth no information showing that the victims were actually in school at the time they said the offenses occurred.[7]  Accordingly, Petitioner has not shown that the state court's conclusion was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on Ground Three.

**Ground Four: "Unreasonable and substandard defense strategy."**

Petitioner claims that counsel failed to present Petitioner's "alibi, his theory of the case, and to sufficiently and effectively argue [Petitioner's] innocence to the jury."  (Dkt. 1, p. 6.)  He asserts that he has shown the state court erred in applying *Strickland* to his claims.  This claim raises the same allegations as those presented in Grounds Two and Three.  Petitioner does not present facts in support of this claim and does not explain how it is different from these other grounds.  Accordingly, he is not entitled to relief on Ground Four.

**Ground Five: "Unreasonable and substandard legal strategy of waiving speedy trial rights without consent."**

Petitioner argues that counsel waived Petitioner's right to a speedy trial without Petitioner's

---

[6]This defense was addressed further in other testimony at the evidentiary hearing (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, pp. 23-25, 43.)

[7]To the extent Petitioner argues that such information would have been established through statements or testimony of school officials, he has not provided any evidence in support of this contention.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

consent and against Petitioner's stated wishes.   Petitioner specifically claims that his right to effective counsel was violated when counsel sought continuances without Petitioner's knowledge or agreement, and for no strategic or otherwise valid reason.   Petitioner argues that the state court erred in applying *Strickland* to this claim in his Rule 3.850 motion.

Petitioner argued in ground two(a) of his Rule 3.850 motion that counsel was ineffective for coercing him not to have a speedy trial.   The court conducted an evidentiary hearing on this claim. Counsel testified that "a speedy trial was waived so that I could continue to take depositions and to continue in discovery, which is what [Petitioner] wanted me to continue to do." (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 13.)   While counsel testified that he was unsure whether he consulted with Petitioner about waiving speedy trial, he stated that "I know that he wanted me to ... depose the victims in this case, which I did at the Children's Justice Center.   I know he wanted to read the ... depositions.   He had to come in so that stuff couldn't have gotten done in the initial speedy trial period."   (Id., p. 14.)   Counsel also testified about the granting of several defense continuances.   He stated that continuances were for issues such as scheduling conflicts as well spacing out the victims' depositions "over time" because he "didn't want them both at the CJC at the same time talking to each other."   (Id., p. 15.)

Petitioner testified at the evidentiary hearing that he was not "consulted or informed" about any continuances and that "I was given Court dates.   I showed up and it was continued."   (Id., p. 42.) He further testified that he informed counsel "emphatically that I did not want to waive any speedy trial rights at all ever."   (Id.)   The state court denied this claim:

> At the evidentiary hearing, counsel testified that he waived Defendant's right to speedy trial based on Defendant's request to counsel to continue discovery.   The Court finds this testimony to be credible, and finds that, as such a request to continue

> discovery is a valid basis to waive speedy trial, counsel cannot be deemed deficient for failing to do so.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 2.) (court's record citations omitted).  Credible testimony before the state court reflected that the amount of time needed to complete discovery, as requested by Petitioner, required seeking a continuance of the trial.[8]  The record supports the state court's finding that counsel was not ineffective for waiving speedy trial under these circumstances.[9]  Petitioner has not shown that the state court's conclusion was contrary to or an unreasonable application of clearly established federal law or was an unreasonable determination of the facts in light of the evidence presented.  Accordingly, he is not entitled to relief on Ground Five.

**Ground Six: "Misadvice and improper overbearing coercion to compel James to accept the unreasonable and substandard legal strategy of not testifying on his own behalf at trial."**

Petitioner asserts that counsel misadvised him not to testify at trial despite his expressed desire to do so.  He states that counsel had no strategic reason to provide this advice.  Petitioner further alleges that counsel intimidated him into not testifying by stating that the prosecution would "tear [him] apart" if he testified.  (Dkt. 1, p. 7.)  In his reply, Petitioner also states that counsel's "overbearing intimidating coercion" compelled him not to testify.  (Dkt. 37, p. 17.)

Petitioner raised this claim in ground two(a) of his Rule 3.850 motion.  The state court held

---

[8]Although not addressed in the state court's order, it is noted that at a hearing on May 27, 2003, counsel waived speedy trial and sought a continuance of trial so that he could complete his investigation.  Petitioner told the court that he agreed with counsel's course of action.  (Dkt. 28, Ex. 1A, Transcript of May 27, 2003 Hearing, p. 2.)

[9]Under Florida law, counsel may decide to waive speedy trial without input from his client.  "The principle is well established that the right to a speedy trial is waived when the defendant or his attorney request a continuance. The acts of an attorney on behalf of a client will be binding on the client even though done without consulting him and even against the client's wishes."  *State v. Kruger*, 615 So.2d 757, 759 (Fla. 4th DCA 1993) (quoting *State v. Abrams*, 350 So.2d 1104, 1105 (Fla. 4th DCA 1977)).

an evidentiary hearing on this ground.  At the evidentiary hearing, counsel testified that he explained

to Petitioner the day before trial that whether to testify was Petitioner's choice alone.  (Dkt. 28, Ex.

14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 20.)  Counsel further testified that he told

Petitioner he believed it was in Petitioner's best interest to testify "because of the nature of the

charges and I believe that the jury wanted to hear from [him] and say he didn't do it."  (Id.)  Counsel

testified that he reviewed a checklist with Petitioner in preparation for testimony.  (Id, pp. 20-21.)

Counsel testified that he discussed with Petitioner "that the defense theory would be a reasonable

doubt that the defendant did not touch these children in a lewd and lascivious manner.  Basically it

never happened.  And [Petitioner] liked that theory."  (Id., p. 23.)  Counsel further stated "that was

always out there that he could get up there and tell them, 'I didn't do it.'"  (Id., p. 24.)  Counsel

testified that he did not threaten or coerce Petitioner not to testify.  (Id., p. 25.)

Petitioner testified that "I did discuss with him - - I had no problem what so ever with

testifying but it was never discussed as a strategy that I would in fact.  He told me if I were to testify

these are his exact words, 'They'll tear me apart up there.'"  (Id., p. 43.)  Petitioner denied counsel

reviewed a checklist for testifying with him.  (Id., p. 49.)

The state court denied this ground, noting that counsel "testified [] at the hearing that he did

not coerce Defendant not to testify at trial ... The Court finds this testimony to be credible, and finds

that it refutes Defendant's allegation that counsel coerced him not to testify."  (Dkt. 28, Ex. 14A,

Final Order Denying Motions for Post-Conviction Relief, p. 2.)

In federal habeas proceedings, deference is given to a trial court's credibility determinations,

and such findings may be disturbed only if they are unreasonable in light of the evidence.  *Gore v.*

*Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007).  The testimony that the state court

found to be credible reflected that counsel advised Petitioner concerning his choice whether to testify and recommended that Petitioner should testify.[10]  Accordingly, the record supports the state court's finding that counsel was not ineffective for the reasons asserted in Ground Six.  Petitioner has not shown that the state court's determination was contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented.  Consequently, Petitioner is not entitled to relief on Ground Six.

**Ground Seven: "Unreasonable and substandard legal strategy of failing to object to numerous objectionable improper procedures by the Assistant State Attorney at trial," and Ground Eight: "Unreasonable and substandard legal strategy of failing to object to numerous objectionable improper procedures by the trial court, the Assistant State Attorney, and the jury in order to preserve the issues for appeal."**

In Grounds Seven and Eight, Petitioner argues that counsel failed to raise numerous objections during trial concerning the Assistant State Attorney, the trial court, and the jury.  He claims that this failure to object left the improper procedures "to stand unopposed for the jury's consideration."  (Dkt. 1, p. 7.)  Petitioner also argues that counsel's failure to object also meant that these issues were not preserved for appeal.  Petitioner further contends in his reply that his Rule 3.850 motion demonstrated that trial counsel was ineffective for not objecting and set forth the instances when counsel should have objected.  He also argues that the state court erred in applying *Strickland* to his claim.

---

[10]Further, it is noted that at trial, the court conducted a colloquy with Petitioner during which he stated that he was satisfied with counsel's advice concerning whether he should testify and that the choice not to testify was his alone.  (Dkt. 28, Ex. 1, p. 176.) Petitioner claims in his reply that he gave these responses during the colloquy "due to counsel's overbearing, intimidating coercion."  (Dkt. 37, p. 17.)  However, Petitioner was under oath when he responded to the trial court's questioning.  (See Dkt. 28, Ex. 1, pp. 174, 176.)

Petitioner raised this argument in ground two(b) of his Rule 3.850 motion.[11] The state court conducted an evidentiary hearing on this claim. Counsel testified concerning several of the categories of objections raised by Petitioner in his amended Rule 3.850 motion, and also testified about certain specific portions of the record where Petitioner alleges he should have objected. First, counsel testified about a specific instance where the prosecutor asked the victim of count one whether she was wearing a two-piece bathing suit. Petitioner claimed that counsel should have objected on the basis that the question was asked and answered. While counsel testified that he could have made this objection, he explained that "I don't know how relevant it was so I let it go." (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 34.)

Counsel was asked about another category of objection referenced by Petitioner, which Petitioner listed as assuming facts not in evidence. Specifically, counsel was questioned about a particular portion of the transcript where, on direct examination, the prosecutor asked the victim of count one several questions about what types of toys Petitioner had brought to the pool on the day of the offenses. (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 35; Dkt. 28, Ex. 1, p. 86.) Trial counsel testified that "I think these were follow up questions ... I don't think they really assumed facts that wasn't [sic] in evidence. It was more of an explanation." (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 35.)

Next, counsel was asked about the series of potential objections Petitioner categorized as leading the witness. Counsel testified that although leading questions are objectionable generally,

---

[11]In his amended Rule 3.850 motion, Petitioner identified thirteen categories of objections that he asserts counsel should have made. For each type of objection, Petitioner also cited specific matters to which, he argued, counsel should have objected. Most instances cited by Petitioner were in regard to the questions or statements of the prosecutor, while one concerned the trial court and several involved the jury's verdict. (Dkt. 28, Ex. 14, Motion to Amend and Reconsider, pp. 10-12.)

"it's my experience that the Courts are going [to] give a little bit more leeway when children - - nine year old children or ten year old children are testifying ... to get the answers out.  I object sometimes if it becomes obvious, if it becomes that - - that counsel's completely testifying or putting words in the child's mouth, I will object.  If they're - - if it's more of a minor I may let it go."  (Id., p. 36.)

Counsel was also asked about failing to object to allegedly improper remarks made by the trial judge.  Specifically, when the victim of count one first took the stand, the court asked her how old she was, and remarked, "Pretty sweater," and "That's neat.  He is going to ask you some questions."  (Dkt. 28, Ex. 1, p. 76.)  Counsel testified at the evidentiary hearing that he did not believe these statements were improper.  (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 36.)

Finally, regarding the potential objections during closing arguments, counsel was asked about a comment by the prosecutor "to the effect" that the witnesses would not have subjected themselves to trial if they were not telling the truth.  (Id., p. 37.)  Counsel agreed that if that was said, he should have made an objection.  Counsel was also questioned about an alleged statement that minors are credible witnesses.  He testified that such a statement would be improper but that he might have "opened the door" in his closing by attacking the victims' credibility.  (Id, pp. 37, 38.)[12]

The state court denied this ground after the evidentiary hearing:

At the evidentiary hearing, when questioned about the specific instances in which Defendant alleges counsel could have raised an objection, counsel testified that the State's questions were either not objectionable, were not of such relevance that they warranted an objection, or there did not exist a valid basis for an objection.  The

---

[12]The record reflects that, during his closing argument, the Assistant State Attorney argued to the jury that "I submit to you there is no grand conspiracy.  There is no reason to fabricate this.  There is no reason to come in and tell the jury the stories the girl[s] said unless it happened to them." (Dkt. 28, Ex. 1, p. 205.)  Petitioner did not specify the precise statements to which he claims counsel should have objected.

Court finds counsel's testimony to be credible, and finds that Defendant has failed to demonstrate that counsel's performance was deficient.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 3.)

The state court's order accurately summarizes counsel's evidentiary hearing testimony. Counsel explained that the potential objections were not necessary or were without any basis.[13] Moreover, Petitioner would not be entitled to relief because he has failed to allege or demonstrate that he was prejudiced by counsel's failure to object at trial.  He does not offer any explanation as to how the proposed objections would have affected the proceedings by shaping the evidence, testimony, and argument presented to the jury such that the outcome of trial would have been different.  Accordingly, Petitioner cannot meet the *Strickland* standard and has not demonstrated that he was prejudiced by counsel's failure to object at trial.  Therefore, Petitioner has not demonstrated that the State court's order is contrary to *Strickland*. [14]

The state court also denied the portion of Petitioner's claim alleging that counsel was ineffective because, by failing to object, the alleged errors were not preserved for appeal:

Additionally, Defendant contends that counsel's failure to object at trial failed to preserve the issues on appeal, thereby prejudicing Defendant.  However, a defendant

---

[13]  To the extent that the state court's order does not address counsel's testimony that he could have made certain objections during closing arguments, Petitioner has not shown that he would be entitled to relief because he fails to allege or explain with any specificity how he was prejudiced by counsel's failure to object to any particular comment by the prosecutor in closing arguments.  Furthermore, as counsel testified, his reason for not objecting may have been that the prosecutor's statements were in response to counsel's closing argument. A review of the trial transcript reflects that counsel's initial closing argument relied heavily on discrepancies in the victims' testimony, while the prosecutor's closing argument emphasized that the victims should be viewed as credible witnesses despite these contradictions.

[14]Inasmuch as the state court's order does not discuss each individual instance in which Petitioner alleged in his Rule 3.850 motion that counsel should have objected, it is noted that collateral counsel was clear that he only intended to address some of the objections at the hearing.  (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 34.)  Moreover, Petitioner does not specifically argue in his federal habeas petition that the state court's ruling was erroneous because it did not address each potential objection that he listed in his Rule 3.850 motion.

is not entitled to relief on allegations of ineffective assistance of counsel for failure to preserve matters for appeal. *See Carratelli v. State*, 961 So. 2d 312, 327 (Fla. 2007) (explaining that, because a defendant alleging ineffective assistance of counsel for failure to preserve matters for appeal will never be able to demonstrate that counsel's deficiency prejudiced the outcome of his trial - not his appeal - such an allegation will never warrant postconviction relief).

(Dkt. 28. Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 3.)  Although this conclusion does not appear to align with the holding of *Carratelli*, Petitioner is not entitled to relief on this claim.  *Carratelli* involved a claim that counsel was ineffective for failing to strike prospective jurors and considered whether the focus of *Strickland*'s prejudice inquiry should be on the trial proceedings or the appeal.  The Florida Supreme Court noted that in considering prejudice in a claim of ineffective assistance of counsel, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding *whose result is being challenged*."  *Carratelli*, 961 So.2d at 322 (quoting *Strickland*, 466 U.S. at 696).  Therefore, the Court went on to "hold that a defendant alleging that counsel was ineffective for failing to object or preserve a claim of reversible error in jury selection must demonstrate prejudice at the trial, not on appeal."  *Carratelli*, 961 So.2d at 323.

Therefore, *Carratelli* supports the conclusion that an allegation of  ineffective assistance of counsel for failing to preserve an issue for appeal is a viable claim in a postconviction motion and that the prejudice inquiry remains whether there is a reasonable probability the outcome of trial would have been different.  The *Carratelli* opinion cited established federal law set forth in *Strickland* in reaching its decision.  *See also Purvis v. Crosby*, 451 F.3d 734, 739 (11th Cir. 2006) (reiterating that, in accordance with *Strickland*, the prejudice inquiry of such a claim focuses on the outcome of trial proceedings).

Regardless of the state court's apparent misapplication of *Carratelli*, Petitioner is not entitled

to relief because, as with the other portion of this claim, he has not alleged or shown how counsel's failure to preserve issues for appeal prejudiced him such that relief would be warranted under *Strickland*.  Petitioner does not demonstrate or explain how there would have existed a reasonable probability that the outcome of trial would have been different absent counsel's failure to object and preserve the issues for appeal.  Accordingly, he has not demonstrated that he is entitled to relief on the basis of ineffective assistance of counsel for the reasons asserted in Grounds Seven and Eight. These claims warrant no relief.

**Ground Nine: "Unreasonable and substandard legal strategy of failing to impeach the State's key witnesses' trial testimony with their own sworn deposition testimony or with each others contradictory trial testimony."**

Petitioner contends that counsel failed to "properly and fully" impeach the State's key witnesses, despite knowing of "discrepancies and contradictions between their trial testimonies and their sworn depositions, as well as between each others trial testimonies ...."  (Dkt. 1, p. 8.)  He asserts that counsel's failure to object allowed the testimony "to stand unchallenged for the jury's consideration."  (Id.)  Petitioner also specifically contends in his reply that counsel was ineffective when he decided not to use the victims' videotaped depositions for impeachment purposes.  He argues that counsel did not bring out the inconsistencies in each victim's testimony, and that counsel's choice not to "vigorously attack" the inconsistencies was unreasonable.  (Dkt. 37, p. 21.)

In ground two(c) of his Rule 3.850 motion, Petitioner argued that counsel was ineffective for failing to impeach the victims with their inconsistent statements.  He specified numerous factual matters on which, he asserted, the victims provided inconsistent testimony.[15]  The state court granted

[15]It appears that, in his Rule 3.850 motion, Petitioner referred only to the trial testimony of the victims, not their deposition testimony.  However, the state court apparently read his claim to encompass the victims' deposition testimony and considered the depositions in its evaluation of Petitioner's claim.

an evidentiary hearing on this ground.

At the evidentiary hearing, counsel testified that Petitioner watched the victims' videotaped depositions and that he and Petitioner discussed the depositions and their consistent and inconsistent aspects. (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, pp. 26, 27.) Counsel also stated that he brought out inconsistencies during the cross-examination of each victim and that the inconsistencies became a main point during his closing argument. (Id., p. 28.) Counsel testified that, while his notes did not reflect why he did not use the depositions to impeach the victims, he would not have done so because of the tedious nature of this procedure. (Id., pp. 28, 29.) Specifically, he explained that using the videotaped cross-examinations would have taken a "long long time" because he would have had to "cue up" the videotape "each time that they made a mistake." (Id., p. 29.) Counsel further testified:

> [Using a videotaped deposition for impeachment] works well for one or two inconsistencies. It doesn't work well for many inconsistencies because it's very difficult to do. So I chose not to do it with the ... video depositions. The other problem is ... these two girls didn't read very well because of their age, so using a transcript was futile at best. So I chose just to basically intrinsically impeach each witness with each other instead of using transcripts or the videotape.

(Id.) Petitioner testified at the evidentiary hearing that he made counsel aware of his notes concerning inconsistencies in the victims' depositions. (Id, p. 44.) Petitioner stated that counsel led him to believe he would use the depositions and that counsel did not discuss the difficulties of doing so with him. (Id., pp. 44-45.)

Following the evidentiary hearing, the state court denied this claim:

> Counsel also testified that he made a strategic decision to impeach the two victims with the inconsistencies between them rather than with their deposition testimony. The Court finds counsel's testimony to be credible, and finds that Defendant has failed to demonstrate that counsel was deficient or that Defendant was prejudiced as

a result.  Moreover, the Court notes that it will not second-guess counsel's reasonable strategic decisions.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 4.) (court's record citations omitted).

Petitioner has not shown that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  Counsel testified that utilizing the depositions would have been problematic, and that he instead decided to address the victims' inconsistent statements during cross-examination.  The trial transcript reflects that the victim of count one testified first.  On cross-examination, counsel asked her questions concerning the offenses, as well as the victims' activities before and after the offenses occurred.  When the victim of count two testified, counsel asked her similar questions during cross-examination.  A number of her responses differed from those given by the victim of count one.[16]  Moreover, as counsel testified, he emphasized these discrepancies during his closing argument.  (Dkt. 28, Ex. 1, pp. 184-188.)  In this way, counsel brought the victims' inconsistent statements before the jury.  The record therefore supports the state court's determination that, under the circumstances, counsel was not ineffective for failing to impeach the victims with their inconsistent statements.  Petitioner is not entitled to relief on Ground Nine.

**Ground Ten: "Unreasonable and substandard legal strategy of failing to call readily available and known witnesses to testify on James' behalf and impeach the State's key witnesses testimony at trial."**

---

[16] For example, the victims provided inconsistent testimony during cross-examination concerning how they got the pool (Dkt. 28, Ex. 1, pp. 94, 142); how many other people were at the pool when they arrived (Id., pp. 95, 143); how much time passed before Petitioner arrived at the pool (Id., pp. 96, 143); the color of the bathing suit worn by the victim of count one (Id., pp. 96, 142); whether the victim of count two was alone in the pool with Petitioner (Id., pp. 108, 151); whether the victim of count two told the victim of count one not to go over to Petitioner (Id., pp. 108-09, 151); and when the victims told adults and law enforcement about the events (Id., pp. 118, 154).

Petitioner asserts that counsel failed to call "numerous known available witnesses" to testify on his behalf at trial.  (Dkt. 1, p. 9.)  He asserts that these witnesses would have contradicted the testimony of the State's key witnesses and the State's theory of the case.  Petitioner specifically argues that the state court erred "in accepting the testimony of counsel that he made a strategic decision not to investigate or call school officials, as they would have provided relevant support to Petitioner's defense."  (Dkt. 37, p. 22.)

In ground two(c) of his amended Rule 3.850 motion, Petitioner argued that counsel should have called several other witnesses to testify for purposes of impeaching the victims' testimony.  Specifically, Petitioner alleged that counsel should have called the sister of the victim of count two, whom he deposed, to testify regarding the victim's propensity to lie; the victims' teachers and school officials to testify that the victims were in school at the time of the offenses; and office administrators from Petitioner's employer to testify that Petitioner was at work at the time of the offenses.  Petitioner's claim has been exhausted to the extent that, liberally construed, it raises the same allegations presented in his Rule 3.850 motion.

The state court conducted an evidentiary hearing on this ground.  At the evidentiary hearing, counsel testified that his decision not to call the sister of the victim of count two was a strategic one based upon the existence of the victims' inconsistent trial testimony:

Q:   Do you recall if you ever considered [calling the victim's sister for impeachment] as part of your trial strategy?

A:   I did consider it but at the point at which we were in the trial, the two stories of the two victims who were supposedly both there at the same time were not matching up so it - - it didn't make any sense at this point to put that on.

Q:   Okay, so you made a decision?

Page 23 of  34

A:      A strategic decision.

(Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary Hearing, p. 30.)

As discussed in Ground Three, counsel further testified that he had no reason to believe the victims' school records would be relevant because they consistently stated that they were at the pool when the offenses occurred.  (Id., p. 39.)  Additionally, as addressed in Ground Two, counsel testified that he could not verify the hours Petitioner worked on May 8, 2002, based on the information he obtained from Petitioner's employer, and that Petitioner's employer became unwilling to assist in the investigation. (Id., pp. 9, 10.)

The state court denied this claim:

> At the evidentiary hearing, counsel testified that he deposed the victim's sister, but made a strategic decision not to call her as a witness.  Counsel testified further that he would not have called school officials and teachers as witnesses as he did not believe such would have been relevant or necessary.  Additionally, counsel testified that he would not have called Defendant's employer's office administrators, as doing so would not have provided an alibi defense (as explained in ground one), which would have been the sole purpose for calling such witnesses ... The Court finds counsel's testimony to be credible, and finds that Defendant has failed to demonstrate that counsel was deficient or that Defendant was prejudiced as a result. Moreover, the Court notes that it will not second-guess counsel's reasonable strategic decisions.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 4.) (court's record citations omitted).

Petitioner has not demonstrated that the state court's finding was contrary to or an unreasonable application of clearly established federal law, or was based upon an unreasonable determination of the facts in light of the evidence presented.  Counsel testified that he made a strategic choice not the call the sister of the victim of count two.  According to Petitioner, the sister's testimony would have been useful to show that the victim had a propensity to lie.  Counsel's

evidentiary hearing testimony suggests that he determined the sister's testimony was not necessary to challenge the accuracy of the victim's statements due to the numerous discrepancies in the testimony of the victims, who were both at the pool when the offenses occurred.  As noted, counsel stressed these inconsistencies during his closing argument.

Furthermore, petitioners must overcome significant barriers to succeed in challenging counsel's strategic decisions.  When reviewing a claim of ineffective assistance of counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Additionally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 690-91.  Petitioner has failed to show that the state court's finding provides any relief as to counsel's decision not to call the victim's sister to testify.

Additionally, for the reasons discussed in Grounds Two and Three, the record supports the state court's finding that counsel was not ineffective for failing to call school officials or individuals from Petitioner's employment as witnesses.  Accordingly, Petitioner is not entitled to relief on Ground Ten.

**Ground Eleven: "Unreasonable and substandard legal strategy of failing to call an expert witness to provide testimony refuting the State's theory of the case and to challenge the credibility of the State's key witnesses."**

Petitioner argues that counsel failed to call an expert witness "trained to provide testimony

regarding the types of issues pertinent to this case" to testify at trial for purposes of refuting the

State's theory of the case and challenging the credibility of the State's key witnesses. (Dkt. 1, p. 9.)

Petitioner further asserts that he demonstrated in his Rule 3.850 motion that counsel was ineffective

on these grounds, and that the state court's denial of his claim was in error.  He alleges that the

expert would have been prepared to testify at the time of trial.  In ground two(d) of his Rule 3.850

motion, Petitioner argued that counsel was ineffective for failing to call an expert witness.  The claim

raised in Ground Eleven of his habeas petition, liberally construed, raises the same claim as that

brought in Petitioner's Rule 3.850 motion.

The state court conducted an evidentiary hearing on this ground.  Counsel testified that he

retained an expert for sentencing.  (Dkt. 28, Ex. 14A, Transcript of March 28, 2007 Evidentiary

Hearing, pp. 31, 32.)  However, counsel testified that he did not retain an expert for trial proceedings

because there was no physical evidence and because there were no records or previous testimony of

the victims upon which a child psychologist could offer an opinion.  (Id., p. 31.)

Petitioner testified that he "emphatically" asked counsel whether an expert witness would

be available but that counsel's responded that he would not spend money on an expert witness.  (Id.,

p. 45.)  The state court denied this claim following the evidentiary hearing:

> Counsel testified [] that, although he retained an expert witness for sentencing, there
> was no basis for calling an expert at trial.  The Court finds counsel's testimony to be
> credible, and that finds that, as counsel ... [did not] have a valid basis for calling an
> expert at trial, counsel cannot be deemed deficient for failing to have done so.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 5.) (court's record

citations omitted).

The court found counsel's testimony that he had no grounds to call an expert witness to

testify during trial to be credible.  Additionally, Petitioner is unable to state with specificity who would have testified as an expert, what testimony the expert could have provided, or how such testimony would have aided his defense.  Furthermore, he does not provide any evidence of what testimony an expert would have offered.  *See Ashimi*, 932 F.2d at 650.   Accordingly, Petitioner has not shown that the state court's finding was an unreasonable application of or contrary to clearly established federal law or an unreasonable determination of the facts.  Ground Eleven provides no relief for Petitioner.

**Ground Twelve: "Unreasonable and substandard legal strategy of failing to request medical and mental health examinations of the State's key witnesses."**

Petitioner contends that counsel failed to request "medical and mental health examinations" of the victims and to "present either the results or their refusals thereof." (Dkt. 1, p. 10.)  He further argues that his Rule 3.850 motion demonstrated counsel's deficient and prejudicial performance and that the state court erred in denying his claim.

Petitioner alleged in ground two(d) of his Rule 3.850 motion that counsel was ineffective for failing to investigate the victims and to acquire or schedule medical or mental health examinations of them.  The state court granted an evidentiary hearing on this ground.  Counsel testified at the hearing that he considered this issue but concluded he had no authority to request the examinations. (Dkt. 28, Ex. 14A, pp. 31, 32.)  He also testified that he did not believe Petitioner asked him to look into this matter.  (Id., p. 32.)  Petitioner testified that he asked counsel why the exams were not conducted but received no response.  (Id., p. 46.)  The state court denied this claim:

> At the evidentiary hearing, counsel testified that he investigated the victims in this case in preparation for a defense, but that there was no evidence to warrant a medical or mental health exam, nor did counsel have the authority or ability to obtain an involuntary exam ... The Court finds counsel's testimony to be credible, and finds

> that, as counsel had no authority to obtain an involuntary health exam of the victims
> ... counsel cannot be deemed deficient for failing to have done so.

(Dkt. 28, Ex. 14A, Final Order Denying Motions for Post-Conviction Relief, p. 5.)   The record

supports the state court's findings.   As counsel considered the issue but determined that he had no

basis to request that the victims be compelled to submit to examinations, he cannot be deemed

ineffective for failing to seek such examinations.[17]   Petitioner has not shown that the state court's

finding is contrary to or an unreasonable application of clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence presented.   Accordingly,

Petitioner is not entitled to relief on Ground Twelve.

**Ground Thirteen: "Lack of trial court jurisdiction."**

Petitioner argues that the State failed to prove that the offenses occurred in Hillsborough

County, Florida.   He asserts that the State's key witnesses did not testify that the offenses occurred

in Hillsborough County.

In ground three of his Rule 3.850 claim, which the trial court summarily denied, Petitioner

argued that the trial court was without jurisdiction to try his case or impose his sentence.[18]   Petitioner

specifically claims in his reply that "the state court erred in applying the Sixth Amendment of the

U.S. Constitution to this ground" because the State failed to show at trial that the offenses occurred

in Hillsborough County.   (Dkt. 37, p. 23.)   As Petitioner has raised this issue in his habeas petition

---

[17]It is noted that numerous appellate courts in Florida have rejected claims that defendants were entitled to compel similar examinations of minor victims in cases involving sex offenses. *See, e.g., State v. Brewster*, 601 So.2d 1289 (Fla. 5th DCA 1992); *State v. LeBlanc*, 558 So.2d 507 (Fla. 3d DCA 1990); *State v. Farr*, 558 So.2d 437 (Fla. 4th DCA 1990).

[18]A claim that the trial court lacked jurisdiction to enter judgment or impose sentence is cognizable in a Rule 3.850 motion.  Fla. R. Crim. P. 3.850(a).

in the context of a denial of his Sixth Amendment rights, it will be considered.[19]  The state court

summarily denied his argument:

> During trial, both victims testified that the alleged incident took place a the Parker's
> Landings Apartments in Hillsborough County.  Furthermore, during trial, Deputy
> Jung testified that she investigated the alleged incident which occurred at Parker's
> Landing in Hillsborough County.  Therefore, because of the evidence presented
> during trial concerning where the alleged incident took place, Defendant is unable to
> demonstrate that the trial court lacked jurisdiction to try the case or impose sentence.

(Dkt. 28, Ex. 14, Order to Respond, and Order Denying, in Part, Motion for Postconviction Relief,

p. 5) (court's record citations omitted).

Deputy Jung of the Hillsborough County Sheriff's Office testified that she investigated the

incident involving the two victims.  (Dkt. 28, Ex. 1, pp. 159-160.)  She testified that she responded

to Parker's Landing, in Hillsborough County, to investigate this matter.  (Id., pp. 158-59.)  The

victim of count one testified that she lived at Parker's Landing, and that there were swimming pools

at Parker's Landing that she had been to before.  (Id., pp. 80-82.)  When she testified about the

offenses, she began her testimony by stating that she went to the pool with the victim of count two

on a day when Petitioner was there.  (Id., p. 83.)  She described the pool in detail before moving on

to the rest of her testimony.  (Id., pp. 83-84.)  The victim of count two testified that she was in the

fifth grade the previous year, and that she lived in Parker's Landing the summer in between fourth

and fifth grades.  (Id., p. 132.)  At that time, she was friends with the other victim, who lived a few

apartments away from her.  (Id.)  When she testified, she also described the pool and discussed a day

at the pool when Petitioner was present.  (Id., pp. 132-33.)  Accordingly, the record supports the state

---

[19]Respondent contends in part that this claim is procedurally barred because Petitioner did not brief it on
collateral appeal.  Petitioner's collateral appeal brief included his argument that the state court erred in denying his
claim concerning the trial court's jurisdiction.  (Dkt. 28, Ex. 15, p. 40.)  Therefore, this claim was presented to the
state courts and is exhausted.

court's finding that Petitioner failed to show that the trial court lacked jurisdiction to hear this case. Petitioner is not entitled to relief on Ground Thirteen.

**Ground Fourteen: "Denial of right to effective counsel to effectively assist the Defendant."**

Petitioner was represented at trial by the Office of the Public Defender.  He argues that the trial court and the Public Defender refused to replace his assigned Assistant Public Defender, who he alleges was ineffective, with another attorney.  Petitioner argues that "the state court erred in applying Sixth Amendment of the U.S. Constitution to this ground" because "the state failed to address his claim that the Public Defender's office interfered with his federal constitutional right to assistance of counsel."  (Dkt. 37, p. 23.)

The record reflects that Petitioner is not entitled to a review of the merits of this claim because it is procedurally defaulted.  Petitioner argued in ground four of his Rule 3.850 motion that his right to effective counsel was violated when the trial court and the Office of the Public Defender denied his request to appoint him a different attorney and that, had he been assigned alternate counsel, he would have been acquitted.[20]  The state court summarily denied this ground because it was not properly raised in postconviction proceedings:

> Defendant alleges that both the trial court and the Office of the Public Defender interfered with Defendant's right to effective counsel by denying Defendant's attempts to replace counsel.  Defendant argues that but for this interference,

---

[20]It is not apparent which portion of the state court proceedings Petitioner references when he asserts that his request to discharge counsel was rejected.  The record reflects that after the Office of the Public Defender was appointed, a private attorney filed a notice of appearance prior to trial but shortly thereafter withdrew from representation without objection from Petitioner.  (Dkt. 28, Ex. 1A, Notice of Appearance; Motion to Withdraw as Counsel for Defendant; Transcript of  May 19, 2003 Hearing, p. 2.)  It appears that Petitioner continued to be represented by his assigned Assistant Public Defender.  The record reflects that representation was next addressed at sentencing.  Petitioner's request to dismiss counsel was granted and the court allowed him to proceed *pro se* for sentencing purposes.  (Dkt. 28, Ex. 1A, Ex. 1A, Defendant's Motion to Proceed Pro-Se; Transcript of March 19, 2004 Sentencing Hearing, pp. 4-12.)  Nevertheless, as this claim was also raised and considered in Petitioner's Rule 3.850 motion, it will be considered in reviewing his habeas petition.

Defendant would have been acquitted of the charges.

The Court finds that Defendant's claims are not sufficient 3.850 post conviction relief claims. Claims of trial court error should be brought on appeal and not raised in a motion for post conviction relief. <u>Bruno v. State</u>, 807 So.2d 55, 63 (Fla. 2001). As such, Defendant is not entitled to relief and ground 4 is denied.

(Dkt. 28, Ex. 14, Order to Respond, and Order Denying, in Part, Motion for Postconviction Relief, pp. 5-6.)

In finding that Petitioner's argument was improper for postconviction review because it should have been raised on direct appeal, the state court denied this claim on an independent and adequate state procedural ground. Accordingly, the claim is procedurally defaulted. Petitioner has not shown that either the cause and prejudice or the fundamental miscarriage of justice exception applies. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.").

Inasmuch as Petitioner argues that the state court's finding was erroneous because it ignored the portion of his claim asserting that the Office of the Public Defender also refused to appoint him a new attorney, he is not entitled to relief. In its recitation of Petitioner's claim, the state court recognized that Petitioner's argument concerned both the trial court and the Office of the Public Defender, and determined that his claims were not sufficient postconviction claims. Thus, the state court identified the entirety of Petitioner's claim in its order.[21] Accordingly, Petitioner is not entitled

---

[21]Petitioner has not shown how he would have been entitled to relief on this portion of his claim. Petitioner has not alleged how his assigned Assistant Public Defender's performance was so deficient that it would have warranted his replacement with substitute counsel. Additionally, in Florida, a criminal defendant is not entitled to

to relief on Ground Fourteen.

**Ground One: "Manifest injustice - Actual Innocence."**

Petitioner asserts that he is innocent.  He argues that "[t]here exists documentary evidence presenting new facts which raise sufficient doubt as to [Petitioner's] guilt, and which undermines confidence in the result of [Petitioner's] trial, where it is more likely than not that no reasonable juror would have convicted [Petitioner] in the light of this new evidence...." (Dkt. 1, pp. 4-5.)  Petitioner claims that school attendance records of the victims and his work records would "contradict the witnesses allegations as to their own and [Petitioner's] locations on the day and time they allege the events occurred."  (Dkt. 1, p. 5.)

Petitioner's claim of actual innocence is not cognizable in his federal habeas petition because it does not raise any federal constitutional claim.  *See Branan,* 861 F.2d at 1508.  Additionally, Petitioner did not raise an independent claim of actual innocence based on these documents on his direct appeal or in his Rule 3.850 motion.  Therefore, this claim is unexhausted and procedurally defaulted because Petitioner has not raised it in state court.

To the extent Petitioner now raises a claim of actual innocence to overcome the procedural default of any other claim in his habeas petition, he is not entitled to relief.  A procedurally defaulted claim can be considered in a § 2254 habeas petition if Petitioner can demonstrate that either the cause and prejudice or fundamental miscarriage of justice exception applies.  *See Smith*, 256 F.3d at 1138.  Under the fundamental miscarriage of injustice exception, a procedurally defaulted claim may be reviewed if a constitutional violation has likely resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To establish this exception, a

_____

choose his appointed attorney. *See Weaver v. State*, 894 So.2d 178, 187-88 (Fla. 2004).

petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Id.* Petitioner maintains that he is actually innocent and that the victims' school records and his work records will demonstrate his innocence.[22]   However, Petitioner is not entitled to a review of the merits of his procedurally defaulted claim heard because he does not make a showing of actual innocence. As discussed in Ground Two, counsel explained that Petitioner's work records could not be used to provide an alibi defense because while they reflected that Petitioner worked for seven hours on May 8, 2002, the hours could not be verified. Additionally, Petitioner has not provided the victims' school attendance records. Therefore, any claim that they demonstrate his innocence is speculative. Petitioner has presented no evidence or information showing that he is actually innocent. Accordingly, Petitioner is not entitled to relief on Ground One.

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**. The Clerk is directed to enter judgment against Petitioner and close this case.

It is further ordered that Petitioner is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to

---

[22]To the extent Petitioner alleges that counsel was ineffective for not presenting this evidence at trial, that claim is raised and considered in Ground Two.

proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made this showing.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on _____July 31st_____, 2014.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:mcl
<u>Copy furnished to:</u>
*Pro se* Plaintiff
Counsel of Record